ALBANY,
August, 1817.

SKINNER
v.
FLEET.

SKINNER *against* FLEET.

THIS was an action of trespass on the case. The declaration stated that the plaintiff was possessed of a negro slave called *Primus*, and that the defendant being sheriff of the city and county of *New-York*, by virtue of a writ of *pluries homine replegiando*, caused *Primus* to be replevied; that the plaintiff claimed the said slave, but that the defendant, nevertheless, suffered him to go at large, without surety and pledges, for his return, in case he should make a default, or a return should be awarded: that *Primus* did make default, and that judgment of nonsuit was awarded against him, and that *Primus*, so suffered by the defendant to go at large and escape, was eloigned, whereby he could not be returned to the plaintiff. The cause was tried before Mr. J. YATES, at the *New-York* sittings, in *November*, 1810.

It was admitted that the defendant had replevied and set at liberty *Primus*, mentioned in the plaintiff's declaration. The material testimony on the part of the plaintiff was as follows: *Edward Chapple* was the owner of the slave in question, and was an inhabitant of the state of *Connecticut*. In *April*, 1802, *Primus* ran away from him, and was gone until *January*, 1804, when *Chapple* accidentally met him in the city of *New-York*, and took him into custody. The plaintiff, who was also an inhabitant of *Connecticut*, was then in *New-York*, and the master of a vessel bound to *London*. The defendant agreed to take *Primus* to sea with him as his cook, and allow his master wages, but told him that unless he had some writing to show when in *London*, the boy might claim to be free, and leave him, and proposed that *Chapple* should give him a bill of sale to be given up on his return home. A bill of sale was accordingly given, and *Primus* went the voyage, and returned with the defendant to *New-York*; and in *September*, 1804, as soon as *Chapple* had heard of the defendant's return, he offered to sell him the boy, and proposed if he should agree to it, that he should keep the bill of sale which he then had, as that instrument conveyed the

Where a *homine replegiando* has been issued, and the party has been claimed as a slave, it is the duty of the sheriff to return that fact, and he is not authorized to set him at liberty; and he should bring the party into court on the return of the writ, where he is to enter into a recognizance with sufficient sureties to the person claiming him to be a slave, to prove his liberty, personally to appear in court, and to prosecute his suit with effect.

A bond taken by the sheriff to himself, with sureties for the prosecution of the suit with effect, and that the party should prove his liberty, and for his return, if return should be adjudged, is of no avail, the sheriff having no power or right to take such bond, and it is no defence in an action against the sheriff for the escape of the slave.

Nor is an assignment of such bond to the plaintiff, a bar to the action against the sheriff, unless it appear that it was accepted in discharge of the suit, or by way of accord and satisfaction.

Where a slave ran away from his master who was an inhabitant of the state of *Connecticut*, and came to the

city of *New-York*, where he was found, and was sold by his master to a person who was also an inhabitant of the state of *Connecticut*, but was then in the city of *New-York* on business, it was held, that this was not such a sale of a slave brought into the state, as rendered him free. (Sess. 36. c. 88. s. 23. 2 R. L. 208.)

boy to the defendant as a slave. The defendant agreed to these terms, and sent *Chapple* the purchase money, together with the wages due him. The plaintiff owned and claimed *Primus* as his slave, in *New London*, for a number of years after that time, and took him to *New York* with him when he went to sea. The plaintiff gave in evidence the exemplification of the record of a judgment in this court, whereby it appeared that on the return of the writ of *pluries homine replegiando*, *Primus* made default in not appearing, and that judgment of nonsuit was, therefore, rendered against him. The remainder of the evidence, on the part of the plaintiff, principally related to the amount of damages.

It appeared on the part of the defendant, that a bond dated the 23d of *October*, 1813, in the penalty of 1000 dollars, had been given by *Isaac Hatch*, *Joseph Corlies*, and *Reuben Leggett*, to *Simon Fleet*, Esq., sheriff of the city and county of *New York*, the defendant in this suit. The condition of this bond was as follows : " Whereas, a writ commonly called a *homine replegiando*, hath been prosecuted out of the court of chancery of the state of *New-York*, directed to the sheriff of the city and county of *New-York*, aforesaid, returnable before the justices of the people of the state of *New-York*, of the supreme court of judicature of the same people at the *City-Hall*, in the city of *New-York*, on the fourth *Monday* of *October*, instant, commanding the said sheriff to cause to be replevied *Primus*, whom *Joseph Skinner* hath taken, and taken, kept; now, therefore, the condition of the foregoing obligation is such, that if the said *Primus* shall prosecute the said writ with effect, and prove and substantiate his liberty in the said court, before the said justices in that behalf, or in case the said obligors shall well and truly return, or cause to be returned, the said *Primus*, in case a return of him shall be adjudged, and shall well and truly save, keep harmless, and indemnify the said sheriff, of and from all manner of damages, costs and charges which he the said sheriff shall or may suffer, sustain or be put to, for, or on account of replevying, or causing to be replevied, the said *Primus*, by virtue of the writ aforesaid, then the foregoing obligation to be void, otherwise to remain in full force and virtue." Upon this bond was written an assignment by the defendant to the plaintiff. The obligors in the above bond were members of the manumission society in the city of *New-York*. *Primus* was re-

plevied on the 28th of *October*, and within four or five days thereafter, *Hatch*, one of the obligors, took *Primus*, and tendered him to Mr. *Burr*, as counsel for the plaintiff, who refused to receive him. The plaintiff had then gone to sea, and his attorney received the assignment of the above-mentioned bond from the defendant.

The judge charged the jury, that this could not be likened to a case of property; but that in deciding it, recourse must be had to the laws and customs of *England* in relation to villeins: that the sheriff ought to have brought *Primus* into court, on the *homine replegiando*, and have returned that he was claimed as a slave; that if they believed the testimony of *Edward Chapple*, the sale of *Primus* was made by him in *New-London;* the plaintiff being then on business in *New-York*, and both being then, and yet, inhabitants of *New-London*, and citizens of *Connecticut;* that this was not contrary to any law of this state, and *Primus* did not thereby become free; and that the only question for the jury would be as to the damages.

The jury found a verdict for the plaintiff, and the defendant moved for a new trial.

*H. Bleecker*, for the defendant. The regular mode of proceeding, in an action *de homine replegiando,* is this: Upon the writ the sheriff *replevies* and sets at liberty the plaintiff, unless he be detained for some cause for which he is not replegiable, in which case he returns that cause upon the writ. If, for instance, he is claimed as a slave, he makes that return, Sureties are, thereupon, taken, by recognisance, in open court, or by the sheriff, on a writ issued for that purpose, that the plaintiff shall prosecute his action with effect, and be returned, if return shall be adjudged. A second writ thereupon issues, called a *non obstante*, commanding the sheriff to replevy the plaintiff, *notwithstanding* the defendant's claim. In case of a replevy on the first writ, the suit is only prosecuted for *damages.* On the second writ, the *liberty* of the plaintiff is also in issue. In the first case, the defendant pleads *non cepit.* In the second, he pleads that the plaintiff is his slave.

The sheriff having, in this case, returned that he had replevied *Primus,* it must be intended that no claim was made, especially as no proof of such claim was offered. Indeed, the return is conclusive.

The declaration charges that the defendant replevied *Primus*, without taking securities. Security is usually given in open court, but it may also be given before the sheriff; in the latter case, it is not taken on the *pluries*, but on a subsequent writ specially awarded.*

\* *Fits. N. B.* 66. 155. *Rast. Ent.* 402, 403, 404.

1. If it was the duty of the sheriff to take security, he has performed that duty; and the replevin bond having been assigned to, and accepted by, the plaintiff in this suit. he cannot now say that the security is insufficient. That the attorney of the plaintiff, in taking this assignment, acted without the advice of counsel, can make no difference.

2. It was not the duty of the sheriff to keep *Primus* in his custody. When chattels are replevied, they are delivered to the plaintiff. In *homine replegiando*, the plaintiff is replevied, and he was given up to himself, or, in other words set at liberty.†

† 2 *Saund.* 60. 3 *Bl. Com.* c. 8.

3. We contend that *Primus* was free. By the act concerning slaves and servants, passed in 1801,‡ (sec. 5.) it is enacted, that "*if any person whatever*, within this state, shall, under any colour or pretext whatever, sell as a slave, or transfer, for any period whatever, any person who shall hereafter be imported or brought into this state as a slave, every person so imported or brought into this state and sold, contrary to the true intent and meaning of the act, shall be free." It will, perhaps, be said, that *Primus* was not brought into this state, but came into it against the will of his master. But it is answered, that the master adopted the act of *Primus*, by the sale here; it was a bringing into the state, within the *purview* of the act; and it was so decided in this court in *Fish* v. *Fisher*.*

‡ 1 *K. & R. R. L.* 614.

§ 2 *Johns. Cas.* 89.

Again; it may be said, that this sale was legal, because made by an inhabitant of another state to an inhabitant of another state. In the case of *Fish* v. *Fisher*, the vendor was an inhabitant of *New-Jersey*. Can it make any difference that the vendee was an inhabitant of another state? The act makes no distinction. On what ground, then, is such an exception to be implied? It will be said, because the act was made to prevent the increase of slaves in this state, and no such increase will arise by a sale to persons out of the state. That such could not have been the only intent of the act is manifest from the next section of the statute, (sect. 6.) which prohibits the exportation of slaves. The real object of the legislature was, as far as circum-

stances rendered it practicable and safe, to put an end to an odious and detestable traffick, held in abhorrence by the most enlightened part of mankind, and in the highest degree opposed to the nature and principles of our government.

The legislature could not have intended to permit a mart to be established in the city of *New-York* for the sale of blacks, where all persons might freely buy and sell slaves, except the inhabitants of the state. Again; the plaintiff has either carried *Primus* out of the state, or he has not. If he has, then *Primus* is free, under the 11th section of the act. If he has not, he has increased the number of slaves in the state. In *Fish* v. *Fisher*, the court justly observe, that this act is penal, and when it acts on the *offender*, it is to be construed strictly; but that it is also in favour of personal liberty, and when it operates on the *offence*, it is to be liberally expounded.

4. The damages are excessive. The plaintiff gave 100 dollars for *Primus*, and the verdict is for 500 dollars.

*Burr*, contra. The defendant was bound to bring the person into court, where he was to enter into a recognisance to prove his liberty, &c.

The security taken in this case was a nullity. The sheriff had no power to take it, and it affords no justification or excuse to him. The security must be by recognizance taken in open court.

The party having claimed *Primus* as a slave, the defendant cannot avail himself of the fact of his being free, as a defence in this suit. The sheriff did not do his duty. He let *Primus* go at large, as if he was a free man.

In *Covenhoven* v. *Seaman*,* the bail were not held to be exonerated by a subsequent surrender of the principal, and acceptance by the other party.

* 1 *Johns. Cas.* 23. 2 *Caines'* Cases in Error, 322. S. C.

The question of sale was submitted to the jury, and they have found that it was made in *Connecticut*.

SPENCER, J., delivered the opinion of the court. The defendant has moved for a new trial, and the questions arising on the case are,

1st. Whether the sheriff performed his duty on the writ *of homine replegiando ?*

2d. Whether the assignment of the bond, and its acceptance by the plaintiff's attorney, was a bar to this action?

3d. Whether *Primus* became free in consequence of the sale to the plaintiff?

4th. Are the damages excessive?

The first point was discusssed and decided on a demurrer to the plaintiff's declaration; and the declaration was adjudged a good one. We considered the case of *Covenhoven* v. *Seaman and others*, (1 *Johns. Cas.* 23.) as having established the practice and proceedings of this court upon this writ, in conformity with the course of proceedings in *England*, as laid down in *Fitzherbert's Nat. Brevium*, 68, and 155. The party suing out the writ, and claiming to be free, should enter into a recognisance in court, with sufficient sureties to the party claiming him to be a slave, to prove his liberty, personally to appear in court, and to prosecute his suit with effect. In the case of *Covenhoven* v. *Seaman and others*, the suit was on such a recognizance, and the person alleged to be a slave had not proved his liberty, or prosecuted his suit with effect, but had been nonsuited, and the court held that the suit was maintainable. In *More* v. *Watts*, (12 *Mod.* 428.) Lord *Holt* said, " If a *homine replegiando* be brought, and the defendant claims the party to be his *villein*, that will be a good return for the sheriff to make, and there shall be no replevin until the plaintiff give security, and that in court, and then there shall go a writ, reciting the security entered into in court, to the sheriff to deliver the plaintiff; and when the plaintiff comes in upon that security so entered into in court, he is not at large, but to find new security that he shall appear, from day to day, pending the cause; and if judgment go against him, he shall render himself to the defendant, and he takes him out of court."

The judge, at the trial, ruled correctly, that the sheriff ought to have brought *Primus* into court, on the *homine replegiando*, and returned that he was claimed as a slave. Instead of doing so, it was admitted that he replevied him and set him at liberty, as mentioned in the declaration of the plaintiff; and the declaration charges that the defendant, as sheriff of the city and county of *New-York*, under the writ of *pluries homine replegiando*, voluntarily permitted *Primus*, being in his custody upon the said writ, and claimed by the plaintiff as

his slave, and taken from his possession, to escape from his custody, and go at large, without sureties, &c.

It appeared, however, that the sheriff took a bond to himself with sureties, for the prosecution of the writ with effect, and that *Primus* should prove his liberty, and for the return of *Primus*, if return should be adjudged. This bond we consider of no avail, as the sheriff had no power or right to take it; and, consequently, it affords no proof that an escape of *Primus* did not take place; nor is it any answer to the allegation, that the sheriff suffered *Primus* to escape and go at large without sureties: for this means sureties in the mode prescribed by law; and we have already seen, that this must be by a recognizance in court.

It appears that the defendant assigned this bond to the plaintiff, with the assent of his attorney. But it is not stated or proved, that it was accepted in discharge of this suit; and in no other way can the assignment bar the plaintiff's recovery. The bond is not so assignable as to enable the assignee to sue in his name; and the assignment and acceptance of the bond are not pretended to have been by way of accord and satisfaction.

By the act concerning slaves and servants, (*K. & R.*, 1. *R. L.* 614.,) it is declared unlawful to sell as a slave, or to transfer for any period, any person who shall hereafter be imported or brought into this state; and every person so imported, or sold, is declared to be free. The provisions of this act are, in this respect, similar to those of the act of the 22d of *February*, 1788; and the latter act received a construction in this court, in the case of *Fish* v. *Fisher*, (2 *Johns. Cases*, 89.) It was there decided, that the elopement of the slave could not be said to be a bringing him into the state; but the subsequent disposition of him to a person residing in this state, instead of reclaiming him, legalized the change of residence by the slave; and thus the slave, by the consent of his master, became domiciled here, and it was, in effect, *a bringing in* the slave contrary to the statute.

The facts here are widely and essentially different. The slave ran away from his master in *Connecticut*, and was sold to the plaintiff, a resident of that state; and it cannot be said that the domicil of the slave was changed to this state, by the assent of his master, or by the adoption of the act of the slave in coming here. This case, therefore, is not brought within the pur-

ALBANY,
August, 1817.

view of the statute, nor within any of the mischiefs intended to be guarded against.

We have no facts before us authorizing us to grant a new trial for excessiveness of damages. We must infer from the case, that the plaintiff has wholly lost his slave. His value, and the damages sustained by the loss, were questions for the consideration of the jury, and we are without *data* on which to pronounce their verdict incorrect.

<div align="right">Judgment for the plaintiff.</div>