DAVID HONE, Plaintiff in Error, v. GODFREY AMMONS,
Defendant in Error.

ERROR TO CLINTON.

A contract made in Illinois for the sale of a person as a slave, who is at the time
in the State, and to a citizen of the State, is illegal and void. TRUMBULL, J.
Where a party in this State claims a negro as his slave, the negro being at the
time in the State, and apparently free, makes a sale of the negro; a note taken
in consideration of the sale, will not be enforced, unless there is affirmative
proof to overcome the legal presumption of freedom. CATON, J.

THIS cause was heard at May term, 1849, of the Clinton
Circuit Court, before UNDERWOOD, Judge. The action was
founded on a promissory note. The second plea was, that the
note was executed and delivered for the sale of a certain negro
man, then running at large in the State, who was alleged falsely
and fraudulently to be a servant for life, and that plaintiff had
a good right, title, and claim to said negro; whereas, in truth
and in fact, said negro was not a servant for life, but was a free
man; and that said note was made and executed for no good
or valuable consideration.

The verdict and judgment was for defendant in the circuit
court.

W. H. BISSEL, W. C. KINNEY, and W. B. SCATES, for plain-
tiff in error.

S. BREESE and B. BOND, for defendant in error.

CATON, J. The evidence shows that a negro was seen in
Clinton county the day on which the note was given; that
Hone claimed that he was his runaway slave. For this negro
the note was given. The defence set up by the second plea
was, that the negro was a free man. I think, beyond all ques-
tion, the evidence sustained this plea. The negro being in this
State, the presumption of law was that he was a free man.
Such have been the repeated and uniform decision of this court,
and I do not feel called upon to vindicate its propriety. The
moment the defendant proved that the negro was on our soil,
he established *primâ facie* that he was free. Not a shadow of
evidence was adduced tending to rebut this presumption; not
even the semblance of possession or control by Hone either at
that or any former period, either in this State or elsewhere.

3 *

The negro was walking abroad as free as Hone himself, and for aught that appeared had ever been so. The bare claim of title by Hone was no evidence of slavery ; nor did the bare fact of purchase by Ammons upon this claim of title, amount to an admission on his part that the man was a slave. Had the law presumed or did the proof show that the man was a slave, it might then be said with more show of propriety, that the fact of purchase admitted title in Hone ; for a title must necessarily have rested in some one, and there would have been no affirmative presumption of law that the title was in some one else rather than in Hone. But it is different as to the condition of slavery, which requires affirmative proof, to overcome the legal presumption of freedom. The proof being that the note was given for a free man, and not for a slave, all the instructions asked, founded on the supposition of his being a slave, were inapplicable to the case, and for that reason alone, the court was justified in refusing them ; and I prefer to place my decision upon the evidence in the case, which to my mind clearly entitled the defendant to the verdict which the jury gave him. When the questions raised by the instructions shall be presented upon a state of facts which involve them, I shall then be prepared to give an opinion upon their propriety. I am of opinion the judgment should be affirmed.

TRUMBULL, J. I concur in affirming this judgment, on the ground that a contract made in Illinois, for the sale of a person as a slave, who is at the time in this State, and to a citizen thereof, is opposed to the policy which the people of Illinois thought proper to adopt in the foundation of their State government, and in the very teeth of the express provisions of the constitution. The State constitution declares that " all men are born equally free and independent," and that " there shall be neither slavery nor involuntary servitude in this State except as a punishment for crime, whereof the party shall have been duly convicted." In a legal point of view, I would as soon think of enforcing a contract to carry into effect the African slave-trade, as that under consideration. The one is forbidden by an act of Congress, and the other by the fundamental law of the State ; both of which are equally binding upon this court.

As a general rule, the validity of a contract is to be determined by the law of the place where it is made, unless it is to be performed in another country, when the place of performance is to govern. If valid where made or to be performed, it is by the general law of nations held valid everywhere ; and if void or illegal by the law of the place of the contract, it is generally

held void and illegal everywhere. These would seem to be principles derived from the very elements of natural justice, and, as general principles, are recognized by the universal consent of all courts and jurists, foreign and domestic. Story's Conflict of Laws, § 242, 243.

The contract sued on was made in Illinois, and the presumption of law is, was to be performed in Illinois. A part of this contract, the consideration of the note, was the sale of a negro in Illinois, to a citizen of Illinois, as a slave. Is there room for question even, that the sale of a person in this State as a slave is contrary to the policy of our State government, to say nothing of the express declarations of the constitution?

If the defendant had a right to purchase the negro as a slave, and hold him as a slave for one moment, I can see no reason why he might not retain him a slave for life; and thus slavery would be introduced into the State in defiance of the declared policy and fundamental law of its people.

Will it be said that the purchaser had the right to retain the negro as a slave till he could remove him to a State where slavery exists? if so, how did he get that right?

The constitution and laws of Illinois certainly do not confer it, and the Constitution of the United States recognizes no such right. The provision in the latter instrument, which declares that " no person held to service or labor in one State, under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from such service or labor; but shall be delivered up on claim of the party to whom such service or labor may be due," and the acts of Congress, passed in pursuance thereof, are unquestionably of binding force upon the people of Illinois; but this clause of the Constitution of the United States has nothing to do with this case.

The moment the master sold the negro, if the sale was valid, he ceased to owe service or labor in the State of Missouri, under the laws thereof; but if he owed service anywhere, it was in the State of Illinois, to one of its citizens, and under its laws. Illinois, however, has no law authorizing the holding of persons in slavery; and the purchaser, therefore, took nothing by his purchase. The moment the master sold the slave in this State to one of its citizens, he ceased to be a fugitive from any other, and the right to remove him as such was gone. By the very act of selling the slave here, his master must be considered as having consented to his coming and remaining here; and this made him free.

This principle is clearly settled by the decision in the case of Fish *v.* Fisher, 2 Johnson's Cases, 88. That case decides that the elopement of a slave could not be considered as bringing

him into the State; but that the subsequent disposition of him to a resident of the State, instead of reclaiming him, legalized the change of residence by the slave; and that thus the slave, by the consent of his master, became domiciled in the State, and that it was, in effect, a bringing in the slave contrary to the statute, whereby he became free. This case is commented upon and sustained by the subsequent one of Skinner *v.* Fleet, 14 Johns. 263.

Many cases might be referred to which, though not precisely in point, settle principles analogous to those involved in this case.

It has been repeatedly held in Mississippi, that all contracts for slaves introduced into that State in contravention of a provision in their State constitution forbidding their introduction as merchandise, were void; that the consideration of notes given on the purchase of negroes so introduced, was illegal, as against public policy, and that such notes could not be collected. Green *v.* Robinson, 5 Howard, Miss. Rep. 80; Cowen *v.* Boyce, ib. 769; Wooten *v.* Miller, 7 S. & M. 380.

It was held in 2 Salkeld, 666, that in order to maintain an action for the price of a slave, it must be shown on the face of the pleadings, that the party was a slave where he was at the time of the sale; and it is said by Best, J., in the case of Forbes *v.* Cochrane, 2 Barn. & Cress. 471, "that there is not any decided case in which the power to maintain an action arising out of the relation of master and slave, has been recognized in this country." I would not be understood as approving all that is said or decided in these English cases, and only cite them for the purpose of showing how jealous courts are about enforcing contracts which are contrary to the policy of their own government.

It is said by the Supreme Court of Massachusetts, in the case of Commonwealth *v.* Aves, 18 Pick. 215, that "in pursuance of a well-known maxim, that in the construction of contracts, the *lex loci contractus* shall govern, if a person having in other respects a right to sue in our courts, shall bring an action against another, liable in other respects to be sued in our courts, upon a contract made upon the subject of slavery in a State where slavery is allowed by law, the law here would give it effect." From what is here said, it is manifest that the court in Massachusetts would not give effect to a contract made upon the subject of slavery in a State where slavery was not allowed by law; for then the *lex loci contractus* would make the contract void.

In the case I am considering, not only was the contract made in Illinois, a State in which slavery is not allowed by law, but the slave who was the subject-matter of the contract was at the

Pensonneau et al. *v.* Bleakley et al.

time in Illinois, and the purchaser was also a resident of the same State. For the court to lend its aid to the enforcement of such a contract, would, in my opinion, be a violation of all principle and all authority. If a private sale of this character is valid, then a public sale would be equally so; and the master of a slave who has escaped into this State, may expose him to public sale in any part of the same. If he may do this, he will also have the right to deliver the possession to the purchaser; and the courts of Illinois will be bound, when called upon, to aid in carrying out these objects. Such an idea is not, in my judgment, to be tolerated for a single moment in a free State.

I have treated this case as if it clearly appeared from the record, that the negro who was the subject-matter of the contract was a slave; and admitting this to be so, am of opinion that the contract was void, and the note without consideration; and that the circuit court committed no error in refusing the instruction asked by the plaintiff, and giving the one it did.

The second plea filed in the case alleges, that the negro whose sale was the consideration of the note, was not a servant for life, but a free man; upon which allegations issue was taken; and I agree with Judge CATON, that the jury, under the evidence, were warranted in finding him a free man, but choose to place my decision on the other ground.

TREAT, C. J., was clearly of opinion that the plaintiff in error was entitled to judgment on the note; and he dissented *in toto* from the conclusions of the other members of the court.