HORACE WATERS ET AL.

v.

ROBERT M. COX ET AL.

1. CONTRACTS—LEX LOCI.—Although, as to personal property, the general rule may be that the law of the domicile of the contracting party governs, because chattels have no *situs* except that of their owner, still, if the contract be in relation to personal property situated at the time of contracting in the foreign jurisdiction, the *lex loci* should govern.

2. PROPERTY PURCHASED IN ANOTHER STATE.—So where a piano was purchased in the State of Michigan, under a contract which by the courts of that State has been construed to be a mere bailment, and the purchaser removes to this State, the courts here will construe such contract in accordance with the rule established in Michigan, and the party, or those claiming the property through him, will acquire no other or greater right or ownership in the property than could have been acquired under the contract had he remained in Michigan.

Waters et al. v. Cox et al.

3. Mortgage of such chattels—Rights of mortgagee.—The purchaser having no right under the contract to mortgage the property while residing in Michigan, he cannot, on removing to this State, execute a chattel mortgage which will be valid as against the claims of the bailor.

Appeal from the Circuit Court of Peoria county; the Hon. David McCulloch, Judge, presiding.

Mr. Geo. Puterbaugh, for appellants; contending that the law of the place where the contract was made should govern its construction, cited Bradshaw v. Newman, Breese, 133; Stacy v. Baker, 1 Scam. 417; Phinney v. Baldwin, 16 Ill. 108; Mumford v. Canty, 50 Ill. 370; Blyston v. Budgett, 10 Ind. 28; Cox et al. v. United States, 6 Pet. 172; Smith v. Hutchings, 30 Mo. 383.

It is a legal presumption that a contract is to be performed where made, unless a different place is specified: Lewis v. Healey, 36 Ill. 433; Denny v. Williams, 5 Allen, 1; McAllister v. Smith et al. 17 Ill. 328; Roundtree v. Baker, 52 Ill. 241.

A court can take notice of a contract only by the light of the laws where it was made: Smith v. Whittaker, 23 Ill. 367; Adams v. Robertson, 37 Ill. 45; Roundtree v. Baker, 52 Ill. 241.

Contracts made in another State will be enforced here, though not conforming to the laws of this State, where they are not based on immoral considerations: Mumford v. Canty, 50 Ill. 370; Story on Conflict of Laws, § 242; Kanago v. Taylor, 7 Ohio St. 134; Booker v. Stacy, 25 Miss. 471; Holt v. Renwick, 11 N. H. 285; Langworthy v. Littell, 12 Cush. 111; Knowlton v. Erie R'y Co. 19 Ohio St. 260; Dyke v. Erie R'y Co. 45 N. Y. 113; Hill v. Spear, 50 N. H. 253; Boothby v. Plaisted, 51 N. H. 436; Levy v. Levy, 78 Pa. St. 507; N. S. Bank v. Donnelly, 8 Pet. 379; Wilcox v. Hunt, 13 Pet. 379; Andreas v. Pond, 13 Pet. 65.

One State will regard and enforce the laws of another State with reference to which the parties contracted: Groves v. Nutt, 13 La. 117; Hughes v. Klinguder, 14 La. 845; Blanchard v. Russell, 13 Mass. 1; Prentiss v. Savage, 13 Mass. 20; Martin v. Hill, 12 Barb. 631; Forward v. Harris, 30 How. 338; Cox v. United States, 6 Pet. 172; McDougal v. Rutherford, 30 Ala. 686; Walker v. Forbes, 31 Ala. 9.

Waters et al. v. Cox et al.

A contract is to be construed by the laws of the place where, by its terms, it is to be performed: Gaddin v. Shipley, 7 B. Mon. 575; Brodhead v. Noyes, 9 Mo. 157; Sherman v. Gassett, 4 Gilm. 521; Bumers v. Clemens, 58 Pa. St. 24; Evans v. Kittrell, 33 Ala. 449; Thompson v. Ketchum, 4 Johns. 285; Pomeroy v. Ainsworth, 22 Barb. 118; Boyd v. Ellis, 11 Iowa, 97; Tyler v. Shipman, 33 Iowa, 194; Ferguson v. Fyffe, 8 Cl. & F. 121; Roundtree v. Baker, 52 Ill. 241.

Under the laws of Michigan, a conditional sale, where the property is to remain in the vendor until payment, creates a bailment, and the vendee is only a bailee: Whitney v. McConnell, 29 Mich. 12; Cause v. Tregent, 11 Mich. 65; Trude v. Anderson, 10 Mich. 357; Deyo v. Jamison, 33 Mich. 94; Johnson v. Whiteman, 27 Mich. 463; Giddy v. Altman, 27 Mich. 209; Preston v. Whitney, 23 Mich. 267.

A bailee can grant no more interest than he has in the thing: Burton v. Curyea, 40 Ill. 320; Bremer v. Peabody, 3 Kernan, 121; Daws v. Perrin, 16 N. Y. 325; Newsom v. Thornton, 6 East. 17; Fawcett et al. v. Osborne et al. 32 Ill. 411.

Messrs. CRATTY BROS., for appellee; that the contract of sale with delivery of possession to the vendee, the title to remain in the vendor, is void as against the creditors of the vendee, cited Green v. Van Buskirk, 5 Wall, 307; Hervey et al. v. R. I. Locomotive Works, 3 Otto, 664.

LELAND, J. The facts in this case as agreed to in the bill of exceptions, are as follows: Appellants, who are residents of New York, make and sell pianos. They had an agent for the sale of their instruments at Grand Rapids, Michigan. On the 10th of November, 1874, at Grand Rapids, they delivered a piano to one James W. Burrows, who gave them two notes of that date therefor, one due twelve months and the other eighteen months after date; these notes bore date at Grand Rapids, and they had each thereunder written the following, viz.

" The above note is given by the maker to Horace Waters & Son as evidence of a part of the price to be paid by said maker, for a certain style 5 piano, numbered 15,696, made by Waters,

N. Y. owned by Waters & Son, which they have agreed to sell and have delivered to said maker.

" But it is distinctly understood and agreed between said parties, that said Waters & Son have not sold, but have only agreed to hereafter sell the said instrument to said maker, and that said instrument is to remain and continue the property of said Waters & Son, until said note and one other note made by said maker for the same purpose, each for the same amount, are fully paid, and a bill of sale of said instrument is given by them, therefore, and that until that time said maker has no property in and no right to sell, mortgage, pledge or make any other disposition whatever of the said instrument.

" This statement may be detached from the above note without being deemed an alteration or mutilation thereof.

" JAMES W. BURROWS.

" Witness:

"J. A. BURROWS, SR."

That said Burrows has never paid said notes, nor any part thereof, nor have plaintiffs ever given said Burrows a bill of sale for said piano.

That afterwards, on or about the first day of August, 1875, Burrows removed from Michigan to Peoria, Illinois, taking with him said piano, without the knowledge or consent of plaintiffs; and afterwards, without the knowledge or consent of plaintiffs, said Burrows executed a chattel mortgage on said piano, as hereinafter stated. Either party to refer to the laws of Michigan without verifying the same, except as directed by the Court, for its own satisfaction.

That the piano replevied was brought by said Burrows from the State of Michigan, and he used it in his theater, in Peoria, Illinois.

That soon after coming to Peoria, Illinois, to-wit: about the 19th day of November, 1875, said Burrows became indebted to defendants for $500, and to secure payment said Burrows made and executed a chattel mortgage on a large amount of his personal property, including the piano replevied in this suit, which mortgage was duly acknowledged and recorded, as required by the statute of this State.

Waters et al. v. Cox et al.

That afterwards executions were issued on judgments obtained against 'said Burrows, who also made default in the conditions of said mortgage. Whereupon defendants foreclosed said mortgage in the usual manner, by placing the same in the hands of the officer who held the executions against said Burrows, and under the said executions and mortgage above referred to, the officer took full possession, as to the requirements of the statute relating to mortgages, of the whole of the personal property of said Burrows, including the said piano, and offered the same at public auction, after having duly advertised by posting notices. At the sale of said property the same was struck off and bought in by said defendants, the proceeds of said sale being insufficient to pay amount of said mortgage. Upon purchasing said piano, said defendants took possession thereof, and continued in the full and peaceable possession of the same until the commencement of this suit.

This was all the evidence introduced by either party.

Appellants replevied the piano in Peoria; there was a trial by the court without a jury, and finding and judgment for appellees. If the above facts had all transpired in this State, there could be no doubt of the correctness of the finding below, but it is claimed that in Michigan the above contract is a valid one, and that by the law of that State, Burrows was a mere bailee, and that the appellants could there have maintained replevin for the piano, even against a *bona fide* purchaser for value from Burrows, and this seems to have been so adjudged in Michigan. We are not advised that any of the following cases to that effect have been overruled: Couse v. Tregent, 11 Mich. 65; Preston v. Whitney 23 Mich. 267; Johnson v. Whitmore, 27 Mich. 463; Whitney v. McConnell, 29 Mich. 12; Deyoe v. Jamison, 33 Mich. 94.

Such we understand still remains the law in Michigan.

It is claimed by appellee that appellants permitted Burrows to remain in Peoria from August 1st, 1875, to November 19th, possessing and claiming the piano as his; that the first note had matured nine days before Burrows executed the mortgage in Peoria; that appellants had an agent in Grand Rapids, and that it is reasonable to presume that the agent knew of Burrows leaving, and where he was.

If the evidence warrants the conclusion that appellants negligently suffered and permitted Burrows to bring the piano to, and deal with it as his own in this State, the *lex loci rei sitæ* might govern, but negligence and knowledge of this kind ought not to be inferred under the stipulation in this case.    No such construction should be put upon the stipulation, which is that appellants did not know of nor consent to the removing, nor the mortgaging of the piano.    There is nothing in the stipulation justifying the inference that appellants knew where the piano was at any time before the replevying.    See, however, on this subject, Born v. Shaw, 29 Penn. St. 288.

If they did know it after the purchase, at the sale by appellee, the delay to sue did no harm to appellees, though it might have done to purchasers from appellees.    As Burrows, by the law of Michigan, was not the owner, but merely a bailee, he could confer no greater right to the mortgagee by the mortgage than he had himself, and that the piano could have been replevied from him is clearly apparent.

In the case in the 29th Michigan it is true the contract provided that the piano should remain at the residence of the bailee until the written assent of the bailor should be given to move the same.    The contract in the case in the 11th did not contain any such clause, and so in the other cases.    We do not think the case in the 29th differs from the others because of this clause, nor that for the want of such clause Burrows had the right to move the piano out of the State, and thus find a purchaser who could hold it as moved out with consent of appellant.    The bailee had no right to dispose of it at all without the consent of the bailor.    We use the expression bailee because the Supreme Court of Michigan treats the conditional vendee, under the conditional executory contract, as a bailee merely.    We are referred by appellees to the cases of Green v. Van Buskirk, 5 Wallace, 307, and same case, 7 Wallace, 139, and Henry v. Rhode Island Locomotive Works, 3 Otto, 664.    We concede that these cases might be in point if appellants had permitted the piano to be brought to this State, but the stipulation is that it was brought here and mortgaged *without their knowledge or consent*.    Suppose the piano had been loaned or hired out to

Burrows for a week only, and he had taken it to Peoria and done with it precisely what he did, the hardship to appellees would have been just as great, and yet no one would question appellant's right to pursue and replevy it. If, therefore, by the law of the place of the contract, Burrows had no right to dispose of the piano to a purchaser for value, so that the purchaser could hold it against appellants, what is the difference? If he could not do so in Michigan, he surely could not in Illinois, unless appellants had allowed the piano to become subject to the laws of Illinois. Surely not if it was brought here and mortgaged against their knowledge and consent.

Although the general rule may be, that as to personal property the law of the domicile of the contracting parties governs, because chattels have no *situs* except that of their owner, still if the contract be in relation to personal property, situated at the time of the contract in the foreign jurisdiction, the *lex loci* would govern; this distinction appears in the case cited from *Otto*, and also in *Green* v. *Van Buskirk*, reversing the decision of the Supreme Court of New York, where the law of the domicile was applied, and so it was in the dissenting opinion in 5 Wallace.

See, also, Story on Conflict of Laws, where the whole subject is exhaustively treated, and particularly see sections 385 to 395. Appellant's counsel has referred the court to a very large number of cases in support of the position that appellant's right to the piano depends upon the law in Michigan. Among them are cited a few from this State, as follows: Bradshaw v. Newman, Breese 133; Stacy v. Baker, 1 Scam. 417; Phinney v. Baldwin, 16 Ill. 108; McAllister v. Smith, 17 Ill. 333; Smith v. Whitaker, 23 Ill. 367; Lewis v. Hadley, 36 Ill. 433; Adams v. Robertson, 37 Ill. 45; Mumford v. Canty, 50 Ill. 370; Roundtree v. Baker, 52 Ill. 241.

We have examined as many of the authorities cited with others, as we deemed it necessary to do, and we have arrived at the conclusion that the case is one where comity requires the application of the *lex loci contractus*, and that a case of exception is not made out which renders the *lex fori* applicable. There are many exceptions to the general rule, and these

exceptions are sometimes so strongly stated as to seem to amount to an abolition of the rule itself. It is sometimes said that if the contract be immoral or unjust, and that enforcing it will be injurious to the rights, the interest, or the convenience of the State, or its citizens, or if the *lex loci contractus* and the *lex fori* come in direct collision as to conflicting rights acquired in each, the comity of nations must yield to the positive law of the land, and if there be an express statute, this might well be so.

If in all cases where the laws of the two places differ, the *lex fori* is to control, there could never be any question. Where there is no conflict, but both laws are alike, there would be no necessity for choice.

After careful consideration and reflection upon the vexed question, while we may regret that the doctrine of the Michigan Supreme Court, according to the cases cited, is not the same as that of our own Supreme Court (Murch v. Wright, 46 Ill., 487, and previous cases), we feel compelled by comity to apply the *lex loci contractus* to the peculiar facts in this case, and reverse the judgment and remand the cause.

Reversed and remanded.